In the Matter of NEW YORK STATE DEPARTMENT OF AUDIT AND
CONTROL, Petitioner, v CRIME VICTIMS COMPENSATION
BOARD et al., Respondents.

Third Department, August 7, 1980

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (John D. Charles* and
*Shirley Adelson Siegel* of counsel), for petitioner.

*Paul S. Hudson* for Crime Victims Compensation Board, respondent.

**OPINION OF THE COURT**

STALEY, JR., J.

Claimant William W. Schwarz was assaulted and choked on August 7, 1979 in the Times Square subway station by two unknown assailants. The crime was promptly reported to the police and, on August 15, 1979, claimant timely filed a claim with the Crime Victims Compensation Board. Claimant suffered an injury to his larynx which has interfered with his ability to speak. Since the injury, claimant has been able to speak only in a coarse, low voice.

The Chairman of the Crime Victims Compensation Board assigned the claim to board member George L. Grobe, Jr., pursuant to subdivision 1 of section 627 of the Executive Law, for determination. On December 7, 1979, he disallowed the claim on the grounds that claimant had suffered no computable loss of earnings as the result of his injuries, as he was unemployed at the time of the incident and that, since claimant had unexempt assets of about $85,000, it could not reasonably be determined that claimant had suffered a serious financial hardship as the result of the expenses incurred. On December 14, 1979, claimant made a timely application, in writing, for review of the decision by the full board, pursuant to subdivision 1 of section 628 of the Executive Law.

On February 27, 1980, the board revised the decision of board member George L. Grobe, Jr., and awarded claimant $5,250 for loss of earnings for the period August 7, 1979 to December 31, 1979, and $450.50 for unreimbursed medical expenses. The basis of this determination appears to be that claimant, although unemployed at the time of the assault, had a prior work history of continuous employment and, based upon his background and experience, would have obtained employment had it not been for his injuries and his speech impediment. It was also noted that claimant was using his assets to meet his daily living expenses.

This proceeding was timely commenced on March 18, 1980, pursuant to the provisions of section 629 of the Executive Law, upon the request of the State Comptroller, on the ground that he believed the award to be excessive and illegal.

The petition alleges that the determination is illegal and excessive because claimant did not suffer a loss of earnings as

the result of the incident, because he would not suffer serious financial hardship if he did not receive an award for loss of earnings, and because he would not suffer a serious financial hardship if an award for unreimbursed medical expenses of $450.50 were not made.

Respondent contends that petitioner lacks standing to bring this proceeding, as the named petitioner is not a party authorized to bring the proceeding pursuant to section 629 of the Executive Law.

■ The first issue raised is whether the named petitioner should be the Comptroller and not the New York State Department of Audit and Control. Section 40 of the Executive Law provides that the head of the Department of Audit and Control shall be the Comptroller, and that the "functions of the comptroller, and his powers and duties pertaining thereto, shall be exercised and performed in the department of audit and control by the comptroller and by such divisions, bureaus, sections, units and officers in the department as he may designate." (Executive Law, § 40, subd 3.) Section 629 is silent as to whether the proceeding to review should be brought in the name of the Comptroller or in the name of the department which he heads. In any event, respondents were fully aware that this proceeding was brought pursuant to section 629 of the Executive Law, and that it was brought at the request of the Comptroller. Assuming that the proceeding should have been brought in the name of the Comptroller, rather than in the name of the Department of Audit and Control, such defect is not fatal in the absence of a showing of prejudice. "Mistakes relating to the name of a party involving a misnomer or misdescription of the legal status of a party surely fall within the category of those irregularities which are subject to correction by amendment, particularly when the other party is not prejudiced and should have been well aware from the outset that a misdescription was involved". (*Covino v Alside Aluminum Supply Co.*, 42 AD2d 77, 80.) It is, therefore, of little consequence whether this proceeding was brought in the name of the Comptroller, or in the name of the department which he heads and in which his functions, powers or duties are performed.

This proceeding seeks to review the two major determinations of the board: first, did claimant suffer actual loss of earnings sufficient to justify the award; and second, did claim-

ant demonstrate "serious financial hardship to be eligible for the award".

Subdivision 3 of section 631 of the Executive Law provides, insofar as it is pertinent, as follows: "Any award made for loss of earnings or support shall, unless reduced pursuant to other provisions of this article, be in an amount equal to the actual loss sustained, provided, however, that no such award shall exceed two hundred fifty dollars for each week of lost earnings or support."

Subdivision 6 of that section provides as follows: "If the board or board member, as the case may be, finds that the claimant will not suffer serious financial hardship, as a result of the loss of earnings or support and the out-of-pocket expenses incurred as a result of the injury, if not granted financial assistance pursuant to this article to meet such loss of earnings, support or out-of-pocket expenses, the board or board members shall deny an award. In determining such serious financial hardship, the board or board member shall consider all of the financial resources of the claimant. The board shall establish specific standards by rule for determining such serious financial hardship."

The term "serious financial hardship" is not defined in article 22 of the Executive Law.

The rules and regulations promulgated by the board, pursuant to sections 623 and 631 of the Executive Law, for the determination of serious financial hardship are set forth in 9 NYCRR 525.9. Subdivision (a) of the rules contains the same language as the first sentence in subdivision 6 of section 631, set forth above.

9 NYCRR 525.9 (b) provides as follows:

"In determining such serious financial hardship, the board or board member shall consider all the financial resources of the claimant or claimants. The board or board member shall exempt the following:

"(1) a homestead or a total of five years' rent for a renter;

"(2) personal property consisting of clothing and strictly personal effects;

"(3) household furniture, appliances and equipment;

"(4) tools and equipment necessary for the claimant's trade, occupation or business;

"(5) a family automobile; and

"(6) life insurance, except in death claims."

9 NYCRR 525.9 (c) provides as follows:

"The board or board member, after taking into consideration all other financial resources, may except the following:

"(1) an amount not exceeding the victim's or claimant's annual income;

"(2) the value of inventory or other property, not exceeding $100,000, necessary for the claimant's business or occupation or the production of the claimant's income."

9 NYCRR 525.9 (d) provides as follows: "In all cases, the board shall, within the limitations of the law, render a decision which will as nearly as possible permit the claimant and/or his family to maintain a reasonable standard of living."

Claimant, at the time of the injury, was unemployed and had been unemployed for a period of eight months, and, although he had been actively seeking employment, he had no definite commitment for future employment.

■ Subdivision 3 of section 631 of the Executive Law limits an award for loss of earnings to "an amount equal to the actual loss sustained". Here, claimant had no actual loss of earnings. While the board might reasonably conclude that claimant had a reasonable expectation of securing employment at some time during his approximate four-month period of disability, such conclusion is purely speculative, particularly where the award for loss of earnings is made from the date of the injury.

This award presumes that claimant would have become employed on the date of the injury had it not been for the assault. There is no basis in the record for such a conclusion. There is, in fact, no basis for a conclusion that the complainant could have become employed on any specific date during this four-month period. The award is, therefore, purely speculative and not permitted by the statute, since there is no basis to determine the amount of lost earnings actually sustained. Since the board reached a conclusion not permitted by statute, the award for loss of earnings was illegal (Matter of Potts v Kaplan, 264 NY 110; Matter of Elwood Investors Co. v Behme, 79 Misc 2d 910).

The board seeks to justify its finding of serious financial hardship upon its regulations which authorize an exemption of assets not exceeding claimant's annual income, which the board considered to be $50,000, and which authorizes an exception not exceeding $100,000 of inventory, or other prop-

erty necessary for claimant's business or occupation, or the production of claimant's income. In this case, claimant had savings in the amount of $25,000, and stocks in the amount of $60,000. He did not conduct a business, and there is no evidence that these assets were property necessary for the production of claimant's income. The purpose of the regulation is to preserve claimant's inventory or other property necessary for the conduct of his business or occupation. Savings and investments do not come within that category. There is also no evidence that claimant's annual income at the time of the injury was $50,000. He had been unemployed for eight months, and his income was limited to unemployment insurance, interest on savings, and dividends on his stocks. Considering claimant's financial resources of about $85,000, and exempting a reasonable amount for his annual income, it cannot be said that unreimbursed medical expenses in the total amount of $450.50 imposed a serious financial hardship upon claimant.

Respondent board also contends that, under 9 NYCRR 525.9 (d), it has discretion to deem serious financial hardship present "[w]here out-of-pocket expenses and/or loss of earnings or support would lower th[e] standards of living." Since claimant was neither employed nor prospectively employed, and thereby suffered no actual loss of earnings, the argument that claimant's standard of living was lowered is without merit.

The board must render a decision solely upon the facts and evidence before it (Executive Law, § 628).

The determination should be annulled, without costs.

MAHONEY, P. J., SWEENEY, KANE and CASEY, JJ., concur.

Determination annulled, without costs.