JOHN LEES, Plaintiff, *v.* COHOES MOTOR CAR COMPANY, INC., DANIEL J. COSGRO, as Mayor of the City of Cohoes, and Others, Comprising the Board of Estimate and Apportionment of the City of Cohoes, Defendants.

Supreme Court, Albany Special Term, January, 1924.

Municipal corporations — zoning ordinance of city of Cohoes prohibiting erection of gasoline tank — power of legislature to authorize adoption of general ordinance in cities delegated by General City Law, § 20(25) — when motor car company, installing tank, acquired property interests — action to restrain private nuisance — tank installed in ravine 50 feet below roadway and 765 feet from plaintiff's dwelling — failure of complaint to allege irreparable loss — amended ordinance prohibiting erection of tank within 1,000 feet from where people live and sleep deemed unreasonable and unconstitutional.

The power of the legislature to authorize the adoption of general zoning ordinances in cities is now delegated to municipalities by section 20(25) of the General City Law.

Where as authorized by a lawfully adopted ordinance of the city of Cohoes its board of estimate and apportionment granted to an incorporated motor car company a permit for the erection and installation of a gasoline tank of the capacity of 15,000 gallons, in an isolated and uninhabited portion of the city, the motor car company so soon as it entered upon the installation of the tank and incurred liabilities for work and material, had property interests in the tank which are entitled to the protection of the law.

After the commencement of the installation under the conditions of the permit the tank, which contained no gasoline, was destroyed by the felonious discharge of dynamite and the motor car company purchased and installed a new tank of the same capacity and in addition incurred other items of expense aggregating many thousands of dollars. In an action brought upon the theory of a private nuisance by a resident freeholder of the city to restrain the motor car company from erecting and maintaining a gasoline storage tank of a capacity of more than 1,000 gallons, and to enjoin the mayor and the board of estimate and apportionment from permitting the construction and maintenance of the tank at the isolated location specified in the permit, it appeared that the place of installation was in a ravine about 50 feet below the surface of the viaduct which carries the roadways of streets over the tracks of the New York Central Railroad Company; that at the point of installation the ravine was 400 feet wide, with deep embankments leading up to said streets. A map received in evidence showed that the dwelling house of plaintiff is located 765 feet to the northwest of the tank; that to the east of the tank it is 180 feet to the roadway of the street and continuing further east there are no dwelling houses until after passing the freight house of the New York Central railroad, 350 feet distant; that to the northwest it is 237 feet to the water main; that to the southeast it is 210 feet to the nearest dwelling house; that the tank is located in a " Y " of tracks, one of which runs easterly to the freight house and one of which runs northeasterly, the junction of said " Y " being over 210 feet to the southwest of said tank; and to the west of said tank for a greater distance than this it is entirely open country with no buildings or structures whatever, except the tracks of the New York Central railroad. The complaint did not allege that the defendant was not responsible or that plaintiff would suffer great and irreparable damage unless an injunction were granted. *Held*, that a motion to continue an injunction granted *pendente lite* will be denied and the same vacated, with costs.

After the service of the summons and complaint herein the common council adopted a resolution amending the ordinance under which the permit for the installation of the tank was granted, so as to provide that no such tank should be erected within 1,000 feet from the place where people live and sleep. *Held*, that as the amended ordinance would practically forbid the erection of such a tank within the city limits, it was not only unreasonable and unnecessary but was in violation of the fifth and fourteenth amendments of the federal Constitution and of article I, section 6, of the state Constitution.

MOTION for an injunction *pendente lite.*

*Taylor & Taylor,* for plaintiff.

*Edward A. Mealy,* for defendant Cohoes Motor Car Company.

*M. J. Conboy,* corporation counsel, for defendant Board of Estimate and Apportionment.

NICHOLS, J. The plaintiff, who is a resident and freeholder of the city of Cohoes, brings this action for an injunction and damages

against the defendant Cohoes Motor Car Company, Inc., and to restrain said defendant from erecting and maintaining a gasoline storage tank in a certain specified location in said city, of a capacity of more than 1,000 gallons, and against the mayor and the board of estimate and apportionment of said city restraining them from permitting the said Cohoes Motor Car Company, Inc., to construct and maintain said tank on said premises.

The complaint does not allege the taxable assessment of the plaintiff's property, although the affidavits filed by the defendant Cohoes Motor Car Company allege that the assessment is $1,000.

This is not, therefore, a taxpayer's action which can now be maintained only under the provisions of article 4 of the General Municipal Law and such an action can only be maintained where the plaintiff is assessed for $1,000 or more; nor can it be maintained as a taxpayer's action to abate a nuisance under the provisions of section 343-b of the Public Health Law, which provides for actions to abate nuisances by the practice of assignation or prostitution. The complaint seeks injunctive relief against a private nuisance. There is no allegation in the complaint that the defendant is not responsible or that the plaintiff will suffer great and irreparable damage unless the injunction is granted. In the 7th folio of the complaint, the plaintiff, after alleging that the tank is a nuisance and dangerous to lives of persons occupying buildings adjacent to said tank, says that " it tends to substantially depreciate the value of real property of this plaintiff and others similarly situated." In the 6th folio the plaintiff alleges that the tank is located a matter of four hundred feet from plaintiff's premises, there being no allegation that it is adjacent thereto; while in the 9th folio the plaintiff says: " the threatened erection of such gasoline tank   *   *   *   has lessened the market and rental value of plaintiff's property   *   *   *   and by reason of said nuisance the plaintiff will be damaged in the sum of $2000.00 as nearly as he can estimate the same."

This is insufficient of itself for injunctive relief. The Appellate Division in *Howley* v. *Francis Press*, 127 App. Div. 646, says: " But the papers upon which the injunction was granted do not show any ground for injunctive relief. There is no allegation that the defendant is insolvent and unable to respond in damages, or that the property threatened to be sold does not have an ascertainable value."

In *Brass* v. *Rathbone*, 153 N. Y. 435, 442, the court says: " The mere allegation of great and irreparable injury apprehended or threatened, which is not supported by facts or circumstances tending to justify it, is clearly insufficient. Therefore, the com-

plaint does not show that the plaintiffs were entitled to relief by injunction," citing *McHenry* v. *Jewett*, 90 N. Y. 58, 62.

Owing to the fact that the plaintiff, to a certain extent, attempts to predicate his action upon the action of the common council of the city of Cohoes; and owing to the further fact that the defendant motor car company has expended large sums of money in installing the tank as, it claims, the result of the action of the common council, I am impelled, even if I am compelled to vacate the temporary restraining order heretofore granted, to discuss the reasons why the plaintiff should not have injunctive relief in this action, even if he applied to and obtained leave of the court to amend his complaint with reference to the necessary allegations for such relief; and why he should not obtain such relief, even assuming his complaint contained the necessary allegations therefor.

On November 15, 1923, the common council of the city of Cohoes amended an existing ordinance of the city so that section 3 thereof reads as follows:

" § III. Kerosene, gasoline, naphtha and other products of petroleum used for heat, light or power shall not be stored, manufactured or kept on sale within the limits of the city of Cohoes, in any building, container, receptacle or other structure, or in any group of buildings, containers, receptacles, or other structures, in excess of one thousand gallons except in isolated and uninhabited portions or sections of the city where said products may be stored with the written permission of the Board of Estimate and Apportionment only after satisfactory proof is furnished to said Board that the lives and property of persons or corporations will not be endangered."

The board of estimate and apportionment thereafter, and on the 7th day of December, 1923, granted a permit to the defendant, Cohoes Motor Car Company, Inc., to install a gasoline storage tank of the capacity of 15,000 gallons on certain premises known as the " Y " situate immediately west of the viaduct connecting Division street on the north and Garner street on the south, subject to certain conditions, one of which was that the tank should be buried five feet under ground, protected by a wire fence and that the ground within fifty feet of the tank should be covered with cinders and all grass and weeds removed and thus forever maintained, and that the defendant motor car company should be liable and pay all damages that may occur to the city of Cohoes or to individuals as a result of the maintenance and operation of said tank; that the permit was not to be assigned; and that on these conditions, restrictions and requirements, the permit shall remain in full force and effect forever. This permit and the con-

ditions therein were accepted by the defendant motor car company and it proceeded to commence the installation of the tank.

After the commencement of the installation of said gasoline tank, and on December 16, 1923, said tank was destroyed by the felonious discharge of a quantity of dynamite therein, there being no gasoline contained therein. Thereafter, the defendant motor car company purchased a new gasoline tank of the same capacity. The said tank and its installation cost approximately $1,500. In addition thereto, there were many other items of expenses incurred by the defendant motor car company, some of them perhaps before the permit was granted, although the record is silent on that point, but aggregating many thousands of dollars.

The summons in this action is dated December 29, 1923, on which date the complaint was verified; and on the same day the restraining order was granted. On January 15, 1924, the common council adopted a resolution of which the 3d subdivision reads as follows:

" § III. Kerosene, gasoline, naphtha used for heat, light or power shall not be stored, manufactured or kept on sale within the limits of the city of Cohoes, in any building, container or receptacles or other structures, or in any group of buildings, containers or receptacles, or other structures, in excess of One Thousand Gallons, except in isolated or uninhabited portions or sections of the city, and at least One Thousand Feet from dwelling houses where people live and sleep, where such products may be stored with the written permission of the Common Council only after satisfactory proof is furnished to said Common Council that said building or buildings, containers or receptacles or other structures are at least one thousand feet from dwelling houses where people live and sleep and that the lives and property of persons or corporations will not be endangered."

The principal change contained therein was that no such tank could be erected within 1,000 feet from the place where people live and sleep.

The plaintiff claims that the act of the board of estimate and apportionment to issue a permit pursuant to the ordinance of November 15, 1923, for such tanks in isolated and uninhabited places was not purely ministerial and that if such delegated duty involves an act of judgment or discretion and is not ministerial, such duty cannot be delegated by the board or body on whom it primarily rested, and to uphold his contention cites *Thompson* v. *Schemerhorn*, 6 N. Y. 92, and *City of Hudson* v. *Flemming*, 139 App. Div. 327. Both of said opinions were written prior to the enactment of the city home rule act, General City Law, section 19 (Laws of 1913, chap. 247), which reads as follows:

" § 19. General grant of powers. Every city is granted power to regulate, manage and control its property and local affairs and is granted all the rights, privileges and jurisdiction necessary and proper for carrying such power into execution. No enumeration of powers in this or any other law shall operate to restrict the meaning of this general grant of power, or to exclude other powers comprehended within this general grant."

By subdivision 2 of section 23 of the General City Law (Laws of 1913, chap. 247) it is provided how said powers shall be exercised:

" 2. In the absence of any provision of law or ordinance determining by whom or in what manner or subject to what conditions any power granted by this act shall be exercised, the common council or board of aldermen or corresponding legislative body of the city shall, subject to the provisions of this section, have power by ordinance to determine by whom and in what manner and subject to what conditions said power shall be exercised."

This is subject to some limitations defined in said statute, none of which apply to the instant case. In the case of *People ex rel. Economus* v. *Coakley*, 110 Misc. Rep. 385, 393, the court says: " It would be difficult to frame a more concise, more comprehensive, more emphatic grant of power to manage and regulate the government of a city in all the particulars essential thereto than is contained in the section just quoted, and the decisions of the courts of this state rendered prior to the enactment of the aforesaid provision (Laws of 1913) can only be upheld in so far as such provisions are in harmony therewith."

Section III of ordinance No. 912, hereinbefore quoted, provides that the tank shall be erected in isolated and uninhabited portions or sections of the city. Webster defines " isolated " as follows: " Isolate; to place in a detached situation; to place by itself; to insulate." The " uninhabited " provision of the ordinance relates solely to the " isolated " provision thereof.

The place of installation of the tank in the instant case is in a ravine which is about 50 feet below the surface of the viaduct which carries the roadways of the streets in that vicinity over the New York Central railroad tracks; and at the point of installation said ravine is more than 400 feet wide with deep embankments of clay leading up to said streets. The map shows that the dwelling house of the plaintiff is located 765 feet to the northwest of the tank; that to the east of the tank it is 180 feet to the roadway of Division street and continuing further east there are no dwelling houses until after passing the freight house of the New York Central railroad, 350 feet distant; that to the northwest it is 237 feet to the water main; that to the southeast it is 210 feet to the

nearest dwelling house; that the tank is located in a " Y " of tracks, one of which runs easterly to the freight house and one of which runs northeasterly. the junction of said " Y " being over 210 feet to the southwest of said tank; and to the west of said tank for a greater distance than this it is entirely open country with no buildings or structures whatever, except the tracks of the New York Central railroad.

Dr. Frederick W. Schwartz, professor of analytical chemistry in the Rensselaer Polytechnic Institute of Troy, the expert employed by the city of Cohoes, says: " The location of a storage tank for gasoline at this point is probably the best one that could be chosen within the corporate limits of the city." And he recommends that the installation be permitted upon certain conditions, all of which are embodied in the permit herein, and when these conditions are fulfilled the proposed installation will be as safe as can be made.

The situation where the tank was located being in an isolated and uninhabited portion of the city, and the board of estimate and apportionment having granted the permit for its erection and maintenance, and the defendant motor car company having expended large sums of money in pursuance of said permit, the defendant motor car company acquired the right to proceed with the construction and installation of the tank and to possess and enjoy the emoluments it might afford. As soon as the defendant motor car company entered upon the installation of the tank and incurred liability for the work and material, it had property interests in said tank. To this right it was entitled to protection. *City of Buffalo* v. *Chadeayne*, 134 N. Y. 165; *People ex rel. Evens* v. *Kleinert*, 201 App. Div. 751, 755; *G. & H. Building Corporation* v. *City of New York*, 202 id. 814.

If the board of estimate and apportionment had the power to grant the permit, was the ordinance of January 15, 1924, valid? The legislature had the power to authorize the adoption of general zoning ordinances in cities, and this power is now delegated to municipalities by subdivision 25 of section 20 of the General City Law (Laws of 1917, chap. 483), which reads as follows:

" 25. To regulate and restrict the location of trades and industries and the location of buildings, designed for special uses, and for said purposes to divide the city into districts and to prescribe for each such district the trades and industries that shall be excluded or subjected to special regulation and the uses for which buildings may not be erected or altered. Such regulations shall be designed to promote the public health, safety and general welfare and shall be made with reasonable consideration, among other things, to

the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development, in accord with a well considered plan."

In *City of Utica* v. *Hanna*, 202 App. Div. 610, 612, the court says: " The general grant of power contained in the first sentence is modified by the second sentence. While the city is the public authority to which the Legislature has delegated the power to determine whether or not such restrictions are to be imposed and as to the character and extent of such restrictions, nevertheless the power has its limitation and the statute itself sets forth guides by which the municipality is bound. Within reasonable limits the common council of the city of Utica in this case was empowered to determine whether the regulative and restrictive provisions of a general plan would promote the public health, safety or general welfare with reasonable consideration to the character of the district, the peculiar suitability for particular uses, the conservation of property values and the direction of city improvement. Undoubtedly the grant of power should be liberally construed and the discretion of the municipal authorities allowed a wide but not limitless latitude. But if an ordinance has no relation to any such consideration and is not in accordance with a considered plan, the delegated authority is not sufficient to sustain it."

The expert, Schwartz, has shown that the location of this tank is an advantageous one for such a tank in the city of Cohoes. The city is about four miles square and the ordinance forbids the erection of a tank within 1,000 feet of where human beings live and sleep. This would practically forbid the erection of such a tank within the city limits. One thousand feet is over sixty rods and would require a section of the city over 120 rods wide and 120 rods deep, being over 60 rods in each direction to a place where there was no human habitation. For all practical purposes, an ordinance which forbids the installation of a gasoline tank within a city, except upon a plot of ground 120 rods square, might just as well have absolutely forbidden such installation within the city.

Gasoline is a modern necessity. The discovery and perfection of internal combustion engines has required the sale and consumption of enormous quantities of gasoline as a fuel for such engines and it enters into the commerce and necessity of a great number of activities in every city. If there are to be retail stations for its sale, it follows there must be some method for wholesale distribution which of course requires accessibility to transportation lines so that the tanks may be refilled from tank cars so that distribution may be made to the retailers. In all the large cities of the land, tanks of large capacity are installed for this

wholesale distribution, and this is true in the neighboring cities of Watervliet and Troy, the two nearest cities to the defendant city of Cohoes. It seems to me that the ordinance of January 15, 1924, is unreasonable and unnecessary; and that it violates the Fifth and Fourteenth Amendments of the Federal Constitution and article 1, section 6, of the State Constitution. " Police regulations must not be unreasonable nor must they make unjust discrimination against individuals or classes." *People ex rel. Durea v. Wilber,* 198 N. Y. 1, 9. In *City of Buffalo* v. *Collins Baking Co.,* 39 App. Div. 432, 433, the court says: " The right of any individual to engage in any lawful calling is guaranteed to him, and any oppressive exaction, or any unreasonable restraint upon the utmost liberty of business growth and advancement, is in contravention of the fundamental law of the land." In *Municipal Gas Company* v. *City of Albany,* 121 Misc. Rep. 606; affd., —— App. Div. ——, where the city of Albany passed an ordinance prohibiting the erection of any gas holder within the limits of the city, the court held that such an ordinance is unconstitutional, unreasonable and unnecessary.

It, therefore, follows that the restraining order herein must be vacated and the motion of the plaintiff for its continuance *pendente lite* must be denied, with ten dollars costs to the defendant Motor Car Company and against the plaintiff.

Ordered accordingly.